**State v. Ondecker**
*[Cite as 6 AOA 150]*

*Case No. CA-8095*
*Stark County, (5th)*
*Decided August 27, 1990*

*Thomas M. Bernabei, Canton Law Director, for Plaintiff-Appellant.*

*John A. Poulos, Canton City Prosecutor, for Plaintiff-Appellant.*

*Michael Puterbaugh, Assistant City Prosecutor, Canton Prosecutor's Office, City Hall - 7th Floor, Canton, Ohio 44702, for Plaintiff-Appellant.*

*Jeffrey Haupt, 4884 Dressler Road N.W., Canton, Ohio 44718, for Defendant-Appellee.*

GWIN, J.

State of Ohio (appellant) appeals from the judgment entered by the Canton Municipal Court wherein it was ordered that certain statements made by defendant-appellee, Robert Ondecker (appellee), and the results of an intoxilyzer test be suppressed. Appellant now seeks our review and assigns the following as error:

"ASSIGNMENT OF ERROR
I.
"THE COURT ERRED IN SUSTAINING THE DEFENDANT-APPELLEE'S MOTION TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT-APPELLEE AT THE SCENE OF THE INITIAL TRAFFIC STOP.
II.
"THE COURT ERRED IN FINDING THAT THE STATE OF OHIO FAILED TO ESTAB-LISH "SUBSTANTIAL COMPLIANCE" WITH THE OHIO DEPARTMENT OF HEALTH RULES AND REGULATIONS CONCERNING THE USE OF THE INTOXILYZER MACHINE AS THEY RELATE TO THE MONITORING OF RADIO FREQUENCY INTERFERENCE."

On October 6, 1989, at approximately 1:28 a.m., Officer Bednar, of the City of North Canton Police Department, claimed that he clocked appellee, by means of a radar, traveling at 60 miles per hour in a 35 mile per hour zone. After effecting a traffic stop, officer Bednar approached appellee's vehicle and noticed a strong odor of alcohol upon appellee. Officer Bednar then asked appellee to get out of his vehicle and perform a field sobriety test. Following the balance test and finger-to-nose test, Officer Bednar transported appellee to the Jackson Police Department to administer an intoxilyzer test. Appellee was subsequently charged with a speeding offense in violation of R.C. §4511. 21 and DUI in violation of R.C. §§4511.19(A) (1), (A) (3).

After a hearing on appellee's motion to suppress, the trial court came to the following conclusions:

"The court further finds that the defendant made a number of statements in response to questions by Officer Bednar at the scene of the traffic stop and prior to the reading of any *Miranda* Warnings indicating the defendant's belief that he was drunk. The court finds that at that time, the defendant's freedom of movement was restricted in a significant way and was 'in custody.' The court further finds that some of the questions asked by Officer Bednar were designed or likely to elicit an incriminating response. Accordingly, the court sustains the defendant's Motion to Suppress statements made by the defendant at the scene of the initial traffic stop that were made in response to questions by Officer Bednar regarding the consumption of alcohol or the effect thereof on the defendant. Statements made by the defendant after the reading of the *Miranda* Warnings at the police department are not ordered suppressed by this ruling.

"The court further finds that the State of Ohio failed to establish 'substantial compliance' with the Ohio Department of Health rules and regulations concerning the use of the intoxilyser machine as they relate to the monitoring of radio frequency interference. Specifically, the court finds that mobile radio transmissions were not tested on all required axes within a 30 foot radius of the instrument. The court also finds that some radio frequencies which would likely be found within the 30 foot radius of the instrument were not tested. Finally, the court finds that the radio frequency interference survey

completed on July 8, 1988 was not repeated after the intoxilyzer's spatial placement or axis was changed subsequent thereto.

"The court further finds that the defendant demonstrated prejudice as to the reliability of the accuracy of the test result of this defendant because of the State of Ohio's failure to comply with the rules and regulations of the Ohio Department of Health.

"Accordingly, the court orders that the result of the intoxilyzer test will be suppressed."

## I.

It is the contention of appellant that the trial court erred in suppressing appellee's statements that he was drunk while at the scene of the initial traffic stop in response to Officer Bednar's questions. The issue confronting us is whether appellee was "in custody" for purposes of triggering *Miranda*[1] when he made the statements the trial court suppressed.

In *Berkemer v. McCarty* (1984), 468 U.S. 420, 434, the U.S. Supreme Court held "that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." However, the court went on to hold that during traffic stops, "persons temporarily detained . . . are not 'in custody' for purposes of *Miranda*." *Id.* at 440.

At the suppression hearing, Officer Bednar testified as follows:

"BEDNAR: On the balance test, he was wobbling. And on the finger-to-nose he completely missed both the right and the left hand.

"PROSECUTOR: Do you recall what time you did these tests to the Defendant?

"BEDNAR: Subsequent to my traffic stop around 1:28 in the morning.

"PROSECUTOR: Okay. Did you ask him if he had been drinking?

"BEDNAR: Yes, I did.

"PROSECUTOR: And what was his response?

"BEDNAR: He kept saying, Yeah, I'm drunk. I..."

P. 26.

"***

"PROSECUTOR: After having him perform these tests, and after asking him whether he had been drinking, what did you then do?

"BEDNAR: I placed him under arrest for operating a motor vehicle under the influence of alcohol.... And he was transported to the Jackson Township Police Department for breath-testing*** ."

P. 27.

"***

"MR. HAUPT: Okay. Well, you were not going to let him go when you detected a strong odor of alcohol, were you?

"ANSWER: After having gone through the field sobriety tests, and smelling the alcoholic beverage, and the way he performed on those two field sobriety tests, I could not - no."

P. 43.

In *Berkemer* the court concluded that all evidence of what transpired at the scene of the traffic stop, including admissions, was admissible. It was only when the defendant was placed under arrest and instructed to get into the police cruiser that he was deemed in custody for purposes of application of *Miranda* Warnings and the exclusionary rule consequence.

This was true notwithstanding the officer had subjectively determined to arrest and not permit the defendant to leave the scene and prior to placing him in the cruiser.

The test was clearly identified as objective, not subjective.

"*** A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, *supra*, at 442, 336.

Therefore, notwithstanding Officer Bednar's subjective plan, appellee was not in custody at the time he made his admissions.

Accordingly, we sustain this assignment of error.

## II.

In this assignment, appellant claims that the trial court erred in suppressing the intoxilyzer results. The trial court made specific findings of numerous infractions by appellant in testing Intoxilyzer Radio Frequency Interference pursuant to the Ohio Administrative Code Chapter 3701-53-02(C). Appellant asserts that the RFI testing substantially complied with the Department of Health Regulations even if we find that there were numerous infractions as the trial court found.

We find that the record supports the trial court's findings that appellant committed the numerous infractions as set forth in the trial court's judgment entry suppressing the intoxilyzer test. As to "substantial compliance," we stated in *State v. Laivins* (April 25, 1989), Delaware App. No. 88-CA-35, unreported:

"Given that the test results in a DUI case present the ultimate answer to the question of a violation of R.C. 4511.19(A)(3) that amounts to a per se violation of law, we are unable to find the admissions of noncompliance herein 'minor and inconsequential' to the accuracy of appellant's breath test. See *State v. Kirkpatrick* (June 1, 1988), Fairfield App. No. 43-CA-87, unreported.

"Also see *City of Coshocton v. William Huffman* (April 13, 1990), Coshocton App. No. 89-CA-26, unreported."

Accordingly, we hold that the trial court did not err in suppressing appellee's breath test, and we overrule this assignment of error.

For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, is hereby affirmed in part and reversed in part.

SMART, J., concurs.

MILLIGAN, P.J., concurring separately.

MILLIGAN, J., concurring.

This case demonstrates the confusion and frustration created when a court (here the Supreme Court in *Berkemer*, (1984), 468 U.S. 420) creates a legal fiction to arrive at a reasonable, even necessary, result.

In its effort to salvage *Miranda* and the exclusionary rule while accommodating the need for effective control of highway safety, particularly the drunk driving issue, the Supreme Court created a fiction, and imposed it upon another fiction. First the court concluded that custody, for these purposes, was not achieved until the driver was placed in the cruiser and taken to the station for intoxilyzer testing. Yet the truth is that most drivers perceive their liberty invaded when pulled over to the side of the road by a cruiser if not when they see the flashing lights in the rear view mirror.

Second, the fiction is compounded when we conclude that the driver is not "under arrest" when the officer personally believes he is. Hence the spectacle of both the officer and the driver believing the driver is not free to leave and the court saying such driver is nevertheless not in custody.

Would it not be more integrous for the courts to determine that driving an automobile is a privilege granted by the state; and the privilege is subject to reasonable regulation as a condition of maintenance of the licensed privilege?

When the courts create legal fiction they often breed confusion, frustration, and ultimately disrespect for the rule of law.

---

[1] *Miranda v. Arizona* (1966), 384 U.S. 436.